# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| ROBERT DENNIS KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV408-103 |
| | ) |
| SHERIFF AL ST. LAWRENCE, | ) |
| UNDERSHERIFF DONNIE | ) |
| ANDERSON, and CHATHAM | ) |
| COUNTY SHERIFF'S | ) |
| DEPARTMENT, AN OFFICIAL | ) |
| DEPARTMENT OF CHATHAM | ) |
| COUNTY GOVERNMENT, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

On April 29, 2008, Robert King filed a complaint in the Chatham County Superior Court pursuant to Title VII of 42 U.S.C. § 2000(e)(4). (Doc. 1.) On May 30, 2008, defendants removed the action to this Court and simultaneously filed motions to dismiss the complaint. (Id.; Docs. 4, 5, 7, 8.) In addition, defendants filed a motion to strike immaterial portions of the complaint and moved to require King to amend his complaint to exclude all irrelevant matters. (Doc. 6.) King has not responded to defendants' motions.

On June 20, 2008, defendants filed a motion pursuant to Local Rule 7.5 requesting that the Court grant their motions as unopposed. (Doc. 9); see L.R. 7.5 ("Unless these rules or the assigned judge prescribes otherwise, each party opposing a motion shall serve and file a response within fifteen (15) days of service of the motion . . . . Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.").

## I. BACKGROUND

King states that sometime prior to April 2006, he attended a sermon at the First Baptist Church of the Islands, during which the pastor taught that "as Christians we must witness to others and try to bring them to Christ." (Doc. 1 Compl. at 3.) Inspired by the sermon, King "resolved to minister to people whenever the opportunity presented itself." (Id.) King states that, while he was working as a legal advisor with the Chatham County Sheriff's Department,[1] such an opportunity presented itself when Kenneth

---

[1] King is a lawyer admitted to practice in Georgia. See (Doc. 1 Compl. at 13.) See also, Chatham County Sheriff's Department, Legal Adviser, http://www.chathamsheriff.org/legaladv.htm (last visited July 8, 2008).

2

Williamson introduced him to Rick Dean, a man who was very ill and hospitalized. (Id. at 3, 7.) Dean asked King to help him prepare a power of attorney so that Williamson could help him pay bills and take care of other matters that he was too ill to attend to himself. (Id. at 3.)

King then attempted to contact Undersheriff Donnie Anderson, who had been his immediate supervisor since 1984, to seek permission to assist Dean. (Id.) Anderson was out of the office. (Id.) Assuming that Anderson would approve, as he had never previously denied such a request, King asked Anderson's secretaries if one of them would be available the next day to witness the power of attorney at the hospital. (Id. at 3-4.)

Later that day, King got in touch with Anderson, who asked him whether he was being paid to assist Dean. (Id. at 4.) King answered that he was not, and Anderson then approved his request to help Dean. (Id.) On or around April 12, 2006, Anderson told King that Sheriff Al St. Lawrence had explained to him that the sheriff did not want his secretaries notarizing anything. (Id.) Anderson, however, assured King that he would accept

3

responsibility for the miscommunication and told King to "go on and help the sick man" and "not to worry about anything." (Id. at 4-5.) On April 13, 2006, King finished preparing the power of attorney form and gave it to Williamson, who took it to the hospital and had Dean execute it. (Id. at 5.)

A couple of weeks later, when King went to pick up his paycheck, he met with Sheriff St. Lawrence and asked him whether he had any problems with him preparing the power of attorney for Dean. (Id.) After assuring the sheriff that he was not being paid for the work and that he would not again ask the secretaries to notarize anything outside of the office, King mentioned that Dean's brother just died and that Dean may need some more help from King. (Id.) The sheriff replied that he had no objections to King helping people with their affairs so long as he did not get paid for it. (Id.)

After Dean's brother passed away, Dean asked King if he would be willing to prepare a will for him. (Id. at 6.) King declined to prepare Dean's will. (Id.) A few weeks later, King learned that Dean had employed Attorney David Dickey to draft his will at a

cost of around $19,000. (Id.) King contends that Dean's ability to pay the cost of the will preparation was his first indication that Dean had a sizeable estate. (Id.)

On May 22, 2006, Williamson called King and informed him that Dean had died of a sudden heart attack at his home. (Id. at 7.) Following the funeral, King discovered that Dean had left the bulk of his estate to Williamson. (Id.) Dean's family sued Williamson, alleging that Williamson and King conspired to unduly influence Dean into leaving his estate to Williamson. (Id.) King contends that, until after Dean's funeral, he had no idea that Dean's estate was valued at over a million dollars or that Williamson was an heir under the will. (Id.)

King alleges that on May 18, 2007, Sheriff St. Lawrence called him into his office and told him that he could either be fired or put in for immediate retirement. (Id. at 8-9.) He alleges that the sheriff denied him "an investigation, a due process hearing, and equal treatment." (Id. at 8.) According to King, the sheriff mistakenly believed that King and Williamson conspired to persuade Dean into signing a will which left the bulk of his estate

5

to Williamson, to the exclusion of his family.[2] (Id. at 7-9.) He claims that Sheriff St. Lawrence came to this conclusion because he believes that "anyone who is religious is either a fool or a fraud." (Id. at 9.) King asserts that both Sheriff St. Lawrence and Undersheriff Anderson are Catholic, and that Anderson is of Irish descent. (Id.)

King contends that he was a model employee who regularly worked an average of 68 hours per week for the sheriff's department, as opposed to other employees of African-American or Irish descent who often took trips to the golf course on county time. (Id.) King claims that the defendants denied him a retirement ceremony, I.D. card, and a weapon, unlike similarly situated employees of Irish and African-American descent. (Id. at 10.) In addition, King claims that during the entire time that he was helping Dean with the power of attorney, he was out of work on sick leave. (Id. at 5.) King alleges that, unlike other employees, he

---

[2] King asserts that the sheriff said "y'all had only known this guy for six weeks and that [you and Williamson] had conspired to steal his estate from his poor family." (Id. at 8-9.) When King questioningly said "y'all?," Sheriff St. Lawrence allegedly "screamed yes, 'y'all you and that damned Williamson, y'all conspired to steal that estate and you may not have gotten anything from it yet but you will, I know you will.'" (Id. at 9.)

was not allowed to return to work by Sheriff St. Lawrence because he was not one-hundred percent fit to return to duty. (Id.) He asserts that other sheriff's department employees, who were either African-American or of Irish decent, "were allowed to return to duty with open wounds, on crutches, or only days after major surgery, and without full doctor releases." (Id.) He alleges that the sheriff treats African-American and Irish-Catholic employees more favorably than white, Baptist employees because the sheriff fears losing support from the Catholic and African-American communities. (Id. at 10.)

King asks the court to award him seven million dollars in punitive damages since the defendants "acted with intent to discriminate against and violate" his civil rights "regarding the free exercise of his religion, discriminated against him based on race and national origin (not of Irish descent)[,]" and "acted with reckless and wanton disregard and a conscious indifference to create disparate treatment and/or disparate impact." (Id. at 11.) He also requests compensatory damages "in an amount to be

determined according to the enlightened conscience of fair and impartial jurors." (Id. at 12.)

## II. LEGAL FRAMEWORK AND ANALYSIS

Defendants contend that King's complaint should be dismissed for failure to state a claim upon which relief may be granted, as King was not fired but rather retired. (Doc. 4 at 2.) Additionally, defendants claim that King's request for punitive damages should be denied because punitive damages are not available against government agencies for intentional employment discrimination and are not available against the sheriff in his official capacity. (Doc. 5 at 2.) In addition, defendants argue that because individual capacity suits are inappropriate under Title VII, King's claims against St. Lawrence and Anderson in their individual capacities is improper. (Id.; Doc. 8.) Defendants also maintain that because the county was not properly served, it should be dismissed from the suit. (Doc. 7 at 2.) Finally, defendants move to strike certain portions of King's complaint on the ground that the facts asserted within them are immaterial and

impertinent, and they request that King "be required to recast his complaint omitting" all impertinent matters. (Doc. 6 at 1, 4.)

### A. Failure to State a Claim

Defendants' contention that King's complaint fails to state a claim because he chose to retire rather than be fired is meritless. (Doc. 4.) "Title VII encompasses employer liability for a constructive discharge." Pa. State Police v. Suders, 542 U.S. 129, 143 (2004); Washington v. Kroger Co., 218 F. App'x 822, 827 (11th Cir. 2007) (recognizing constructive discharge doctrine in cases where "working conditions [are] so intolerable that a reasonable person . . . would be compelled to resign"). King alleges that he retired only after he was assured by the sheriff that he would be fired if he did not put in for immediate retirement. (Doc. 1 Compl. at 8.) Absent this ultimatum, he would have continued working. (Id. at 8-9.) Accordingly, his decision to retire cannot become the basis for dismissing his employment discrimination claim at this stage of the proceedings. Dean v. Westchester County Dist. Attorney's Office, 119 F. Supp. 2d 424, 430-31 (S.D.N.Y. 2000)

("The most common constructive discharge cases involve scenarios where the employee is threatened with firing unless she resigns.").

## B. Unavailable Claims

Defendants next argue that King's claims for punitive damages should be dismissed because claims for punitive damages for intentional employment discrimination are unavailable against a government agency. (Doc. 5 at 2.) Title VII expressly precludes the recovery of punitive damages from a government, government agency, and political subdivisions. Freeman v. City of Riverside, 2007 WL 1129004, at * 2 (N.D. Ga. Apr. 16, 2007); McGriff v. Decatur County Sheriff's Office, 2005 WL 1899392, at * 2 (M.D. Ga. Aug. 9, 2005) (finding that sheriffs' offices are immune from punitive damage claims under Title VII). Because punitive damages are not available against the sheriff's department,[3] King's

---

[3] Defendants characterize the "sheriff's department" as "an official department of the Chatham County Government," thereby recognizing that the county is the proper defendant in this case (as King intimated in his pleading). (Doc. 5 at 1.) Nowhere do they assert that the sheriff's department is not a suable entity. But see Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (upholding district court's decision that plaintiff failed to state a claim against the sheriff's department since "'sheriff's departments and police departments are not usually considered legal entities subject to suit'") (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)); Lovelace v. DeKalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) (county police department

claims for punitive damages against this political subdivision of the county should be dismissed.

In addition, King cannot recover punitive damages against Sheriff Al St. Lawrence or Undersheriff Donnie E. Anderson in their official capacities, as an official-capacity suit against these officials is the functional equivalent of suing the county, which is not subject to suit for punitive damages. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1322 n. 14 (11th Cir. 2000) (noting that plaintiffs could not recover punitive damages against the sheriff in her official capacity because such a suit is the functional equivalent of suing the county); Colvin v. McDougall, 62 F.3d 1316, 1319 (11th Cir. 1995); Healy v. Town of Pembroke Park, 831 F.2d 989, 991 (11th Cir. 1987).

Finally, to the extent that King seeks to hold Sheriff St. Lawrence and Undersheriff Anderson liable in their individual capacities, those claims must be dismissed, as "[t]he relief granted

---

not a legal entity subject to suit under § 1983); Grech v. Clayton County, Ga., 335 F.3d 1326, 1348 n.48 (11th Cir. 2003); Jackson v. Bulloch County Jail, 2008 WL 2437421, at *1 (S.D. Ga. June 16, 2008) (sheriff's department is not a proper legal entity subject to suit).

11

under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original); Spann v. Cobb County Pretrial Court Servs. Agency, 206 F. App'x 910, 911 (11th Cir. 2006) ("[i]ndividual capacity suits under Title VII are . . . inappropriate").

### C. Insufficient Service of Process

Defendant Chatham County contends that King's service of process on Dawn Carter, a paralegal with the County attorney's office, was insufficient to perfect service upon the county. (Doc. 7 at 1-2.) It appears from the "sheriff's entry of service" that King sought to have the county served via service on the County Manager, Russ Abolt. (Doc. 7 Ex. B.) Defendant admits that a copy of the complaint was served upon Ms. Carter on May 1, 2008, (Doc. 7 at 2; Ex. A), but contends that neither Mr. Abolt nor Ms. Carter are authorized to accept service on behalf of the county. (Doc. 7 at 2; Ex. A.) Defendants concede that the Chatham County Sheriff's Department is an official department of the Chatham County government and recognize that King can bring a Title VII

suit against the county, as his employer. (Id. at 1); see generally, Ga. Const. Art. 9 § 1 ¶ 3; Nichols v. Prather, 650 S.E. 2d 380, 384-85 (Ga. App. 2007). Federal Rule of Civil Procedure 4(j)(2) requires that local governments be served by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on a defendant." Georgia law requires that a county be served by delivering process upon "a majority of the county commissioners or upon the chairman of the board of county commissioners." Grech v. Clayton County, Ga., 335 F.3d 1326, 1343 (11th Cir. 2003) (citing O.C.G.A. § 36-1-5; Bd. of Comm'rs of Newton County v. Allgood, 214 S.E.2d 522 (1975); Clayton County v. Sarno, 145 S.E.2d 283 (1965)). As neither Dawn Carter nor Russ Abolt is the chairman of the board of commissioners (or even on the board of commissioners), both are unauthorized to accept process on behalf of Chatham County. (Doc. 7 Exs. A & B.) According to his affidavit, Pete Liakakis, the Chairman of the Chatham County Board of Commissioners, is the "only person authorized to accept service of process on behalf of

Chatham County, Georgia." (Doc. 7 Ex. D.) King does not dispute this contention. Because King failed to serve Liakakis, service was insufficient. Therefore, Chatham County (which stands in place of the sheriff's department) should be dismissed from this suit.[4]

## III. CONCLUSION

Because all of the claims against all of the defendants in this case should be dismissed, King's entire complaint should be **DISMISSED**. Defendants' motion to strike is **DENIED** as moot.

**SO REPORTED AND RECOMMENDED** this 11th day of July, 2008.

/s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[4] In the typical *pro se* litigant case, involving a plaintiff untutored in the law, the Court would give the plaintiff additional time in which to properly perfect service. In this case, however, plaintiff is an experienced lawyer who should have been aware of the service requirements. Additionally, King has not shown "good cause" for his failure to properly perfect timely service. Fed. R. Civ. P. 4(m). Accordingly, the Court will not provide him with additional time in which to serve process.